# UNITED STATES DISTRICT COURT
## For the District of Massachusetts.

| | |
|---|---|
| Robert C. Piligian, <br> Plaintiff, <br><br> v. <br><br> Seven Unknown Agents of the U.S. Marshal Service, Individually and in their Official Capacities, <br> Defendants. | U.S. DISTRICT <br> Civil Action No. <br> _____ <br><br> Verified Complaint <br><br> (Jury Trial Demanded) |

## COMPLAINT

Plaintiff, Robert C. Piligian, pro se, for their Complaint, states as follows:

2021 JUN -1  AM 11:05
U.S. DISTRICT COURT
DISTRICT OF MASS.
FILED IN CLERKS OFFICE

## I. PARTIES

1. Plaintiff, Robert C. Piligian, is and was, at all times relevant herein, (confined as a pretrial detainee of the Worcester County Jail and House of Correction as of May 21, 2021) an adult citizen of the United States and a resident of the Commonwealth of Massachusetts.

2. Defendants, Seven Unknown Agents of the U.S. Marshal Service ("U.S.M.S. Agents"), whose names are currently unknown but can be reasonably discovered through compulsory process, were, at all times relevant herein, agents of the United States Marshal Service that personally participated

in the events depicted herein. Defendants' principal office is in Massachusetts

## II. Jurisdiction & Venue

3. This action arises under the mechanism set forth in the decision of the U.S. Supreme Court in <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619, 622 (1971), to remedy the deprivation of rights, guaranteed by the Fifth Amendment to the U.S. Constitution, by persons acting under the color of federal law.

4. This Honorable Courts jurisdiction is invoked by the federal question depicted supra. Thus, jurisdiction is appropriately conferred by 28 U.S.C. §§ 1331 & 1343.

5. Defendants are residents of the Commonwealth of Massachusetts; thus, venue is proper pursuant to 28 U.S.C. § 1391(b)(1). Plaintiff resides within the District of Massachusetts, there is no real property in dispute, and Defendants were employees of an agency of the United States, acting under color of legal authority; therefore, venue is otherwise proper under 28 U.S.C. § 1391(e)(1)(C).

## III. PREVIOUS SUIT BY PLAINTIFF

6. Plaintiff has filed no other lawsuits dealing with the same

facts pleaded herein or otherwise relating to his apprehension.

## IV. STATEMENT OF CLAIM

7. At all times relevant herein, Defendants were "persons" in their individual capacities, and agents of the United States, in their official capacities, who, under color of federal authority, directly acted, aided, abetted, or otherwise enabled the use of excessive force upon Plaintiff after he had surrendered upon arrest, to the degree of causing substantial bodily harm, blood loss, and scarring, and then engaged in witness tampering, where they instructed Plaintiff to destroy evidence of the event, under implicit threat, in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

## V. STATEMENT OF FACTS

8. On or about February 11, 2021, Plaintiff was loitering around his place of work, a McDonald's Restaurant, in Merrimack, New Hampshire, with his girlfriend, Samantha Chase.

9. At some time prior to 11 A.M., Plaintiff encountered a female officer who was "responding to a call", across the roadway from his workplace, at the Rapid Refill convenience store.

10. A brief conversation revealed that the officer was a police officer of the Merrimack Police Department and was

there with other officers to investigate a call pertaining to a domestic dispute.

11. The female officer requested Plaintiff's name, and Plaintiff provided his true name. After a brief period, Plaintiff, since he was out of custody on bail for a pending offense in a Massachusetts court, inquired to the officer as to whether or not he was the subject of any warrants. The female officer responded in the negative.

12. At approximately 11 A.M., with Samantha Chase as a witness, two males in an unmarked vehicle with no identifying clothing, equipment, or visible badges, nearly collided their vehicle with Plaintiff as he walked near the entrance of the Rapid Refill convenience store.

13. Turning to scold the individuals, Plaintiff saw the male in the front passenger-seat of the vehicle withdraw a glock-style handgun and charge its barrel with his free hand before starting to exit the vehicle.

14. Plaintiff's extensive criminal record and dealings with criminal associates who may want to do him harm prompted him to begin a run across the gas station property.

15. Shortly thereafter, Plaintiff stopped running after seeing an SUV enter the property in front of him with

approximately five individuals therein, all clearly displaying badges and other obvious law enforcement paraphernalia, who then proceeded to aim AR-framed weapons at him and instructed him to stop.

16. Plaintiff complied immediately with their instructions, then proceeded to lie down flat, in the prone position, with his hands clear and visible. Plaintiff then ceased all movement as the individuals approached.

17. An individual among the party of law enforcement agents came up to Plaintiff, grabbed his head, and slammed his face upon the concrete. No agents intervened.

18. Defendants then kept Plaintiff on the ground and identified themselves as "U.S. Marshals."

19. An exorbitantly voluminous amount of blood was leaking from Plaintiff's chin and face. As they stood him upright, it began to leak onto his clothes, especially his "t-shirt."

20. Defendants began to detach complimentary windshield-cleaning kiosks from the surrounding pillars of the gas station. They emptied them upon the ground in an obvious attempt to clean away the large amounts of blood.

21. One of the defendants began to converse with the

the female officer with whom Plaintiff had spoke prior. She appeared to agitate the Marshal or agent and explicitly stated that she hoped that they would not attempt to report that Plaintiff tried to resist, that she would not falsely indicate a resistance to arrest in her report, and that Plaintiff had no warrants servable in New Hampshire.

22. Approximately one hour later, Plaintiff arrived at a county detention facility in Manchester, New Hampshire. Prior to intake an agent instructed that he'd "better" get rid of his "t-shirt", which was plainly bloodsoaked.

23. During intake, a county correctional officer reminded Plaintiff of the defendant's instruction. Plaintiff reluctantly disposed of the shirt, but retained the less blood-stained jacket and paints, which are dark in color and likely to have gone unnoticed.

24. At no point was Plaintiff brought before any healthcare professional before arriving at the detention facility, where a nurse briefly examined Plaintiff and commented that he "probably needs a few stitches" before taking no further action.

25. Events are depicted further in Plaintiff's affidavit submitted herewith as 'Exhibit A'.

# VI. CAUSES OF ACTION

26. Plaintiff realleges and incorporates para. 1-25, supra, for the purposes of this section. All counts are violative of Amendment IV.

## COUNT I

### Excessive Force Resulting in Serious Bodily Injury

Defendants personally used gratuitous force on, otherwise, used more force than was necessary, to apprehend Plaintiff for any lawful purpose and restrain him, and such use of force directly or indirectly caused more-than-temporary-injury, bleeding, pain, scarring, and/or disfigurement. Para. 17.

## COUNT II

### Failure to Intervene in Commission of Count I

Defendants personally failed to intervene, despite participating in the apprehension of Plaintiff, when they had witnessed the use of excessive force against him. Para. 17.

## COUNT III

### Failure to Provide (or) Denial of Access to Medical Care

Defendants failed to provide or, otherwise, denied access to medical care, where Plaintiff's injuries, sustained in the course of his arrest, were obvious and objectively necessitated medical attention, resulting in the unnecessary and wanton infliction of pain and anguish upon a detainee. Para. 24.

## COUNT IV

### Tampering with a Witness/Evidence

Defendants did personally attempt or succeed in washing away blood of Plaintiff, evidence of their illegal conduct depicted in Counts I & II, from the concrete where it had pooled and dripped, with the intent that it be destroyed and to inhibit its use in official proceedings, denying Plaintiff access thereto for the litigation of this action. Para. 20.

## COUNT V

### Tampering with a Witness/Evidence

Defendants did personally, or conspired and acted jointly, to compel Plaintiff, through threat, coercion, and/or use of intermediaries, to destroy or dispose of evidence in the form of a blood-soaked "t-shirt" precipitated from their illegal conduct in Counts I & II, with the intent that it be inhibited from use in official proceedings, denying Plaintiff access thereto for the

litigation of this action.

## VII. JURY TRIAL DEMAND

27. Plaintiff hereby demands a trial by jury, in the above-entitled proceedings, for all matters so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE,

Plaintiff, Robert C. Piligian, prays for relief from the irreparable harms of which he complains, in the following form:

28. Against Defendants, jointly or severally, in their individual capacities:
    a) Compensatory Damages, for Counts I through V, in a sum no less than $3,000,000.00 (Three-Million Dollars), for constitutional violations.
    b) Punitive Damages, for Counts I through III, in a sum no less than $1,000,000.00 (One-Million Dollars).
    c) Punitive Damages, for Counts IV through V, in a sum sociable to the guidelines for punishment under 28 U.S.C. § 1415(a) or $1,000,000.00 (One-Million Dollars).
    d) Declaratory Relief from the Court, stating that Defendants individually violated Plaintiff's rights.

29. Against Defendants, in their official capacities:

    a) Declaratory Relief from the Court, stating that Defendants, in their official capacities, violated Plaintiff's constitutional rights.

    b) Any other relief which this Honorable Court may deem just and proper.

Dated: 05/25/2021

Respectfully Submitted,

*/s/ Robert C. Piligian*
ROBERT C. PILIGIAN
(MSA# 0699890)
5 Paul X. Tivnan Drive
West Boylston, MA 01583

## VERIFICATION

I, Robert C. Piligian, hereby verify the Complaint supra and do depose and state that all of the foregoing is absolutely true and correct, and as to those things I allege upon information and belief, I believe them to be true, under the penalties and pains of perjury.

Executed at West Boylston, MA, On 05/25/21.

*/s/ Robert C. Piligian*
Robert C. Piligian